**Jeffrey B. PINE, in his capacity as Attorney General of the State of Rhode Island and Providence Plantations**

v.

**James J. MALACHOWSKI, in his capacity as Administrator of the Division of Public Utilities and Carriers.**

No. 93–672–M.P.

Supreme Court of Rhode Island.

June 16, 1995.

Jeffrey Pine, Atty. Gen., Paul J. Roberti, Sp. Asst. Atty. Gen., for plaintiff.

John Spirito, Jr., Public Utilities Commission, Joseph P. Carroll, Woonsocket, Louis Jackvony, III, Jackvony & Jackvony, Lincoln, Peter J. McGinn, Tillinghast, Collins & Graham, Providence, for defendant.

OPINION

WEISBERGER, Chief Justice.

This case comes before us on a statutory petition for certiorari filed by the Attorney

General of the State of Rhode Island (petitioner or Attorney General) to review a decision and order of the Public Utilities Commission (PUC or commission) that authorized in part a general increase in water rates to the Woonsocket Water Department (Woonsocket). Essentially the petitioner challenges the authorization by the PUC of enhanced rates to fund a significant series of capital-improvement projects (CIP). These projects, pursuant to the order of the PUC, will be financed in part from revenues over a three-year period. The decision and order contemplates the issuance of bonds in order to fund the remainder of the CIP. We affirm the decision and order of the PUC. The facts of the case as derived from the findings of the PUC insofar as pertinent to our review are as follows.

The equipment and infrastructure of Woonsocket was found to have deteriorated significantly since the last rate hearings in 1986. The PUC had noted that the need for renewal and replacement had reached a position of urgency. The PUC also noted that the Woonsocket City Council and the voters of the city were unwilling to authorize a bond issue that would fund the CIP over a more protracted period. Initially Woonsocket requested approval of a five-year, twenty-project CIP projected at a total cost of $11,837,000. In order to implement this program Woonsocket requested $773,600 in renewal and replacement funds to begin work on fourteen specific projects for the rate year beginning January 1, 1994. Woonsocket requested authorization to spend $1,050,600 on furtherance of its CIP during fiscal year 1995 and $1,043,600 for fiscal year 1996.

The commission carefully scrutinized these requests and reduced the CIP authorization to be expended from annual revenues to $555,600 per fiscal year. The PUC further required that Woonsocket finance the remaining implementation of its CIP with a bond issue that would fund the additional renewal and replacement during the fourth and fifth fiscal years. In reducing the request for expenditures to be derived from annual revenues, the PUC took such steps as eliminating the replacement of the GAC (granular activated carbon) filters from the

CIP and approved that expenditure as a chemical expense. It also reduced the CIP requests by utilizing the sum of $350,000 that had been left over from a prior bond issue.

The PUC noted, as the Attorney General has pointed out, that some of the estimated costs might be greater than the actual costs expected to be incurred. In order to be certain that these additional revenues would not be diverted from the CIP projects, the PUC ordered that these revenues be placed in restricted-receipt accounts and further required Woonsocket to file a report every four months on its capital program. The report was mandated to list the twenty improvement projects and note the status of each project as of the date of the report. The PUC further required that if any of the twenty projects are delayed beyond the year of proposed implementation, Woonsocket must note the reasons for the delay and the prospective starting date. The PUC also ordered Woonsocket to report on the details of its pending $6.4 million bond issue, noting when it is issued, the interest rate, issuance costs, and the like. Woonsocket must also report on the status of any additional bond issue that might be authorized.

Thus in substance the commission reduced the three-year aggregate total from $2,867,800 to $1,863,800, which included the $350,000 of available proceeds from a 1982 bond issue. It took into account other potential savings in reaching its authorized figure of $555,600 annually. The petitioner argues that even after the deductions, the commission erred in authorizing rate increases to fund the annual amounts to be expended on the CIP ($555,600) because he identified further possibilities of inflated cost estimates. He suggests that the commission's decision would allow Woonsocket to collect revenues in excess of its annual-revenue requirement and thus increase the rate of Woonsocket ratepayers by 85 percent.

The report and order responds to this argument by its conclusion in which the commission states in part:

"This commission is mindful that its decision to authorize an 85 percent revenue increase for Woonsocket will not be well received by Woonsocket's ratepayers. Un-

questionably, in light of our present economy, this increase could not have come at a worse time. However, through the evidence elicited during this docket, we sincerely believe that but for the large increase approved herein, the WWD would be headed for disaster. The record of this docket lucidly reflects that the WWD has been seriously neglected over the years. Important capital projects have been delayed. Portions of the transmission and distribution system were allowed to deteriorate. * * * Notwithstanding, this Commission will not stand by and watch the WWD fail. Surely, it would have been preferable to keep the WWD water system whole by gradually repairing and upgrading its facilities. Unfortunately, we are now faced with a real potential for failure that must be resolved by extreme short-term relief. We have taken efforts though through this report and order to prevent a repeat of the past neglect we have witnessed in this docket. We have restricted all debt service, renewal and replacement (CIP), rate case expense, and chemical funds to ensure that these funds are used to keep the WWD repaired and operating efficiently. We have also mandated that bonding be used in the near future in order to spread the cost of long-life assets over the generations of customers benefiting from their construction and use. The debt service requirements for these future bonds are provided through this report and order.

"The Commission has taken the necessary measures with Woonsocket to put it back on the road to recovery. We believe the revenue increase approved in this rate proceeding was categorically necessary to accomplish this. And although we are uneasy with its magnitude, we must note that Woonsocket ratepayers, even with this increase, are still paying less for water than many of their counterparts in other Rhode Island water systems. In closing, this commission will be periodically monitoring the efforts of the WWD and will not hesitate to unilaterally step in when required. We also stand ready to assist Woonsock-et's government leaders in any efforts to augment the efficiency and professionalism of the WWD."

■ We are mindful of our limitations in reviewing orders of the PUC in light of the broad statutory authority that has been conferred upon the commission. *Rhode Island Chamber of Commerce Federation v. Burke,* 443 A.2d 1236 (R.I.1982). We have always engaged in deferential review of the formation of regulatory policy by the commission and have declined to disturb decisions of the PUC unless they are clearly wrong and unreasonable. *United States v. Public Utilities Commission of Rhode Island,* 635 A.2d 1135 (R.I.1993); *Roberts v. Narragansett Electric Co.,* 490 A.2d 506 (R.I.1985); *Bristol County Water Co. v. Harsch,* 120 R.I. 223, 386 A.2d 1103 (1978). In determining whether a decision is lawful and reasonable, we do not weigh conflicting evidence, nor do we substitute our independent judgment concerning the wisdom of the determination for that of the commission. *Narragansett Electric Co. v. Burke,* 122 R.I. 13, 20, 404 A.2d 821, 826 (1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980).

■ We are of the opinion that the commission in this instance responded to what it reasonably believed to be an emergent situation. Vital equipment and the infrastructure of Woonsocket had been allowed to deteriorate to a dangerous degree through lack of periodic repair, maintenance, and replacement. The PUC rightly foresaw that further deterioration might cause the system to fail, with the result that significant danger and hardship would befall the users of its water supply, residential, commercial, and industrial. At best the estimate of cost of replacement of major equipment is an inexact science. The factual determinations of the commission are conclusive upon this court and are generally unassailable if supported by legal evidence. *Valley Gas Co. v. Burke,* 446 A.2d 1024, 1030 (R.I.1982). We cannot say that the commission's response to this emergency was not based upon legal-opinion evidence even though the Attorney General

might conscientiously view the credibility of certain estimates as less persuasive than did the commission.

For the reasons stated, the petition for certiorari is denied and the order of the PUC is affirmed. The writ heretofore issued is hereby quashed. The papers in the case may be remanded to the Public Utilities Commission with our decision endorsed thereon.

BOURCIER, J., did not participate.